SARAH MOORE ET AL. v. LUTHER SWIFT.

Decided April 15, 1902.

**Quitclaim Deed—Innocent Purchaser.**

A deed by which the several grantors therein, described as the heirs of M., "bargain, sell, and quitclaim" unto the grantee "all our and each of our right, title, claim, and interest" in and to the land, with habendum clause to have and to hold "the above released premises" to said grantee, his heirs, etc., the grantee paying full value for the land, is not a quitclaim in the strict and technical sense, conveying the mere chance of title, and precluding the defense of innocent purchaser. The interests of the grantors doubtless being undivided, the use of the words "right, title, claim and interest" was of no special significance.

Appeal from Nacogdoches. Tried below before Hon. Tom C. Davis.

*Ingraham, Ratcliff & Huston,* for appellants.

*Mimms & King,* for appellee.

GILL, ASSOCIATE JUSTICE.—Luther Swift, plaintiff below, brought this suit against the defendant for partition of 60 acres of land fully described in his petition, averring that he owned an undivided half interest therein, the defendants owning the other half.

Defendants answered by general denial and allegations that the deed from one Byrd to Swift's vendor was in fact a mortgage and that Swift had notice thereof. Defendants by cross-bill brought into the controversy another tract containing 65 acres which they alleged was owned by them and claimed by Swift and for which they prayed judgment. As a basis for the recovery of the 65-acre tract they alleged that in Swift's chain of title thereto is a deed from Byrd and wife to Jane Mast. That this deed though absolute on its face, was in fact executed to secure the payment of a debt and was therefore a mortgage. They also charged upon Swift notice of these facts and prayed judgment for both tracts. In this connection they allege the amount of the debt for which the mortgage was given and offer to discharge the debt with interest as a condition precedent to the recovery prayed for. Swift made no objection to the litigation of the title to the 65-acre tract in this proceeding.

In response to this cross-bill, Swift by supplemental petition denied generally the allegations in the answer, pleaded limitation of three

years; and set up as a defense that he was a bona fide purchaser for full value in good faith without notice of defendant's alleged rights.

On a trial before the court without a jury Swift was awarded an undivided half interest in the 60-acre tract and his prayer for partition was granted. This part of the judgment is not assailed. The court also adjudged him to be the owner of the 65-acre tract, and from this judgment defendants below have appealed.

The facts are practically undisputed and may be briefly stated as follows: Charles Byrd and his wife Francis are the agreed common source. On October 31, 1891, Charles Byrd and his wife Francis conveyed the 65-acre tract to Jane Mast, by warranty deed for a recited cash consideration of $100, which deed was duly placed of record November 10, 1893. The deed was in fact given to secure a loan of $100 made by Jane Mast to Byrd, the only agreement with reference thereto being that if the loan was repaid within twelve months from date Jane Mast would deed the property back to the Byrds. The loan was made, $10 being retained for the first year's interest and $2.50 for the expenses of the transaction. About a year after its date Byrd paid about $45 on the loan and since then has paid nothing more. This payment practically amounts to the interest on the loan for the time which has elapsed. On October 30, 1899, Luther Swift purchased the land from the heirs of Jane Mast (the latter having died), paying full value therefor without notice. The deed executed by the heirs of Jane Mast to Swift was as follows:

"The State of Texas, Nacogdoches County.—Know all men by these presents, that we, the heirs of Jane Mast, deceased, D. C. Mast, Z. T. Mast, N. A. Mast, joined by her husband M. Mast, and Sarah B. Seale, joined by her husband E. N. Seale, of the county of Nacogdoches, State of Texas, for and in consideration of the sum of one hundred dollars to us in hand paid by Luther Swift, of the county of Nacogdoches, in the State of Texas, the receipt of which is hereby acknowledged, have bargained, sold, and quitclaimed, and by these presents do bargain, sell and quitclaim unto the said Luther Swift, all our, and each of our right, title, interest, estate, claim and demand in and to a certain tract of land situated in said county of Nacogdoches, State of Texas, bounded and described as follows:  *  *  *  and is to contain 65 acres, with all and singular the hereditaments and appurtenances thereunto belonging or in anywise pertaining. To have and to hold the above released premises to the said Luther Swift, their heirs and assigns forever. Witness our hands this 30th day of October, A. D. 1899,"

After the execution of this deed Henry Byrd, acting in behalf of Charles Byrd and wife, went to Swift after his purchase and offered to pay off the mortgage, apprising Swift of the facts. Swift refused to accept, standing upon his rights as an innocent purchaser.

The judgment of the trial court is assailed on the ground that the refusal to allow defendants to discharge the mortgage and recover the land was error, the contention being that the deed from Jane Mast's

heirs is a quitclaim deed in the strictest sense, and therefore one under which Swift could not claim as an innocent purchaser.

The evidence by which the parol trust is sought to be ingrafter on the absolute deed from Byrd and wife to Jane Mast is undisputed, and while the court filed no conclusions of fact, we must hold that he could have reached no other conclusion than that the trust was established. Limitation was not pleaded against the right to enforce the trust, hence the only theory upon which the judgment can be supported is that Swift is in a position to be protected as an innocent purchaser for value. This depends upon whether the deed from the Mast heirs to him is a quitclaim deed as that term is used in its strict and technical sense.

The rule that a purchaser under a quitclaim deed will be denied the protection of the registration laws has been repudiated in most jurisdiction, but in Texas it still obtains. The doctrine, however, has been limited to cases where from the terms of the instrument it is clear that the purchaser bought a mere chance of title as contradistinguished from the land itself.

A deed almost identical with the one in question, but which contained the usual habendum clause, has been held sufficient to support the plea of innocent purchaser without notice. Garrett v. Christopher, 74 Texas, 453. The only difference between the language of the deed in the case cited and the case before us is that here the words "above released" occurs in the habendum clause, whereas in Garrett v. Christopher the words "above described" are used. We think, however, there is no material difference. In each case the words used are mere words of reference and are without significance otherwise. If, as is held by some authorities, the adequacy of price paid and the surrounding circumstances may be taken into consideration in determining the nature of the transaction and the intent of the parties (Taylor v. Harrison, 47 Texas, 461; Harrison v. Boring, 44 Texas, 255), then it is fairly made to appear that Swift bought the land and not the mere chance of title. It is undisputed that he paid full value for the land. This fact of itself tends to show that he intended to buy a good title. Against this is the fact that in the conveying clause the grantors undertook to convey only their right, title, and interest. But this does not necessarily militate against the construction adopted by the trial court. To the instrument in question there were six grantors. They conveyed as heirs of the decedent Jane Mast. Their interests were doubtless undivided, and it was not especially significant of a purpose to convey only a chance of title that they used the words, "all our and each of our right, title, claims, and interest," etc.

We are of opinion the instrument is not a "quitclaim" deed in the sense necessary to preclude the defense of innocent purchase, and the defense having been fully established, the judgment is affirmed.

*Affirmed.*