**W. C. BRYAN et al., Appellants,**

v.

**C. W. THOMAS, Appellee.**

No. 7394.

Court of Civil Appeals of Texas.

Texarkana.

May 29, 1962.

Rehearing Denied June 26, 1962.

Jones & Jones, Mineola, Woodrow H. Edwards, Mt. Vernon, for appellants.

Allen Clark, Greenville, for appellee.

CHADICK, Chief Justice.

This is a suit brought under the provisions of the Uniform Declaratory Judgments Act, Article 2524–1 Vernon's Ann. Tex.Civ.St., for judgment declaring the respective interests of the parties in a tract of land. The judgment of the trial court is affirmed as modified.

W. C. Bryan, the heirs of his deceased wife, and the heirs of J. E. Johnson, deceased, as plaintiffs, sued C. W. Thomas and the widow and children of W. B. Bryan, deceased, to have the court declare and adjudicate the respective interest of each of the parties in a tract of approximately 100 acres of land in the Mary Latham Survey of Hunt County, and for a partition of the mineral estate. The defendants, except C. W. Thomas, answered by disclaiming any right, title or interest in the land. Thomas answered by general denial, plead his title as vendee of Josie Bryan, Payton Bryan and H. F. Bryan, the heirs at law of W. B. Bryan, deceased, and by cross-action likewise sought partition of the mineral estate among the parties owning it.

Judgment was entered declaring undivided interests in the mineral estate to be owned 1/96th by plaintiffs W. C.Bryan, Helen Duffey, and B. B. Bryan, jointly, 1/12th by the plaintiffs, J. E. Johnson, Lucille Butt, and Frankie Gray jointly, and 3/96ths by defendant C. W. Thomas. Partition was denied without prejudice to a future partition action because of the absence as parties to the suit of the owners of the remaining interest. After thorough examination and study of appellants' four points of error the fourth is found to have merit and will be sustained, the others are respectfully overruled. A discussion of the questions presented by the fourth point is justified.

On August 30, 1936, W. B. Bryan executed and delivered to W. C. Bryan an instrument of conveyance which was recorded January 27, 1953. The parties to this suit agree that this instrument conveyed a mineral interest in the Latham Survey tract to W. C. Bryan. The parties differ, however, as to the quantity of the interest granted. The appellees construe it to convey a 1/96th undivided mineral interest, the appellants say a 1/12th interest. The body of the instrument, except description, is reproduced without effort being made to simulate strikeovers, erasures and changes in its wording that are visible on a photostatic copy of the original, to-wit:

"That I, W. B. Bryan, of the County and State, hereinafter called Grantor (whether one or more) in consideration of the sum of Ten & No/100 ($10.00) Dollars to Grantor cash in hand paid by W. C. Bryan hereinafter called Grantee (whether one or more) the receipt of which is hereby acknowledged, have GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents do GRANT, BARGAIN, SELL and CONVEY unto said Grantee, an undivided one-twelfth (1/12th) (same being a 1/12th of the customary 1/8th royalty, or 1/96th of total production) interest in and to all of the oil, gas and other minerals in and under the following described tract of land, situated in Hunt County, Texas, to-wit: (land description omitted).

"It is distinctly understood and herein stipulated that said land is under an Oil and Gas Lease providing for a royalty of 1/8th of the oil and certain royalties or rentals for gas and other minerals, and that Grantee herein shall receive one-twelfth of the royalties and rentals provided for in said lease; but he shall have 1/12 part of the annual rentals paid to keep said lease in force until drilling is begun.

"It is further agreed that Grantee shall have 1/12 interest in any bonus money received by the Grantor in any future lease or leases given on said land, and that it shall be necessary for the Grantee to join in any such lease or leases so made; That Grantee

shall receive under such lease or leases ⅟₉₆th part of all oil, gas and other minerals taken and saved under any such lease or leases, and he shall receive the same out of the royalty provided for in such lease or leases, but Grantee shall have ½ part in the annual rentals paid to keep such lease or leases in force until drilling is begun.

"TO. HAVE AND TO HOLD the same unto the said Grantee, his heirs and assigns, forever; PROVIDED, same may be terminated as set out above. Grantor hereby binds himself, his heirs, executors and administrators to WARRANT and FOREVER DEFEND all and singular the said minerals unto the said Grantee, his heirs and assigns, against all persons whomsoever lawfully claiming or to claim the same or any part thereof, by thru or under me."

In drawing the instrument under discussion a printed "Royalty Contract" form was used. This form was designed for use in conveying a royalty interest, and the difficulties encountered stem from the obvious effort by the draftsman to amend the form to convey an interest in land quite different from the form's original purpose. The photostatic copy shows deletions were made in the printed text, and that a parenthetical explanation or qualification of the interest the parties intended the instrument to convey was typed into the granting clause. The parenthetical insert and erasures and changes also indicate the effect of the instrument was the subject of more than casual consideration. Three blank spaces had the typwritten word "No" entered, scratched through and the fraction "½₂" written in by hand. At one point a printed phrase " * * * it shall not be necessary * * * had the word "not" erased or inked out, giving the sentence in which the phrase appears the opposite meaning to that it conveyed before the word was eliminated. The entire reversion clause

was obliterated and struck from the form. It is understandable that the contract contains some awkward and non sequitur expressions of the agreement of the parties.

■ As mentioned, it is the theory of the parties and the judgment of the trial court that the grant made by the quoted instrument is an interest in the mineral estate. If the language enclosed in the parentheses in the granting clause is disregarded the grant made thereby is clearly an undivided ½₂th interest in minerals underlying the land. If the parenthetical language is considered alone the grant described is "a ½₂th of the customary ⅛ royalty, or ⅟₉₆ of total production", an interest having the characteristics of royalty. The interest conveyed must be determined from a consideration of the intention of the parties as gathered from the language of the entire instrument. Garrett v. Dils Company, 157 Tex. 92, 299 S.W.2d 904; Harris v. Windsor, 156 Tex. 324, 294 S.W. 2d 798; Benskin v. Barksdale, Tex.Com. App., 246 S.W. 360; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442. Any doubt as to the proper construction of the grant will be resolved by construing the instrument as conveying the greatest estate the language used will permit. Garrett v. Dils Company, supra; Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551; Allen et al. v. Creighton et al., Tex.Civ.App., 131 S.W.2d 47, er. ref. And all provisions of the instrument will be given effect and construed in such way as to avoid inconsistencies and conflicts between them insofar as the language of the instrument, and the intention of the parties as disclosed thereby, will permit. 17 C.J.S. Contracts § 309, p. 726.

■ The parenthetical insertion in the granting clause should be considered on the basis of common usage. Parentheses are usually used to set off interjected explanatory or qualifying remarks disconnected with the structure of the sentence in which they appear. Viewed in the light of common usage, the granting clause, may be treated as a grant of ½₂th of the mineral

estate, and the parenthetical language as an explanation of the effect of the then existing mineral lease upon the grant made. Thus treated, the lease provisions stipulating the grantee's rights under existing or future leases, as well as all other provisions, are consistent with such grant and the stipulated rents and royalties are proportionate to a grant of an interest of $\frac{1}{12}$th of the mineral estate in fee. On the other hand, if the parenthetical language is considered as in derogation of a grant of $\frac{1}{12}$th of the minerals and as restricting the grant either to a royalty interest or a $\frac{1}{96}$th mineral interest, the stipulations respecting the existing lease are inconsistent in that the rents and royalties stipulated are not incidental or proportionate to the grant made. If the grant is to a $\frac{1}{96}$th of the minerals, rents and royalties from the existing lease are out of proportion. And if the grant is of royalty the inconsistency is further compounded and argues on intention to make a rather exotic agreement.

To sustain the proposition that the grant is a $\frac{1}{96}$th interest in minerals, language must be found in the instrument showing the grantor intended that the instrument transfer to the grantee rents and royalties in excess of and out of proportion to the mineral interest granted. Nothing in the instrument points clearly to such intention, but on the contrary the language of the deed in its entirety points to an intention to convey a $\frac{1}{12}$th interest in minerals consistent with the stipulations of rents and royalties from existing and future mineral leases. At most the parenthetical insert creates a doubt as to the estate the grantor meant to convey. The doubt requires the language within the parentheses be treated as explanatory and the grant construed as conveying a $\frac{1}{12}$th undivided interest in the mineral estate.

To accord with this construction of the mineral deed, the judgment of the trial court is modified so as to vest $\frac{1}{12}$th interest in all the oil, gas and other minerals of the described tract in the appellants, W. C.

Bryan, Helen Duffey, and B. B. Bryan jointly, and a $\frac{1}{3}$rd interest in C. W. Thomas; otherwise the judgment of the trial court is affirmed.

On Motion for Rehearing

 Although Rule 435, Vernon's Texas Rules of Civil Procedure requires Court of Civil Appeals to adjudge costs in a case as the court deems proper, it is appropriate to state the reason for dividing the costs in the court's opinion. The trial court judgment denied relief in appellant's principal action, and that judgment has been affirmed except as modified to reduce C. W. Thomas's recovery from a $\frac{3}{96}$th undivided interest in minerals to a one-third ($\frac{1}{3}$) interest therein. To the extent of the reduction the appellants prevailed in this court. Consistent with the usual rule that the losing party pays the costs and on consideration of all factors involved, costs in the trial court and on appeal will be assessed three-fourths ($\frac{3}{4}$) against the appellants, and one-fourth ($\frac{1}{4}$) against the appellee.

Except as indicated the appellants' motion for re-hearing is overruled.